**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON (NORTHERN) DIVISION**

**BETTY WALKER AMOS**                                    **PLAINTIFF**

**V.**                          **CIVIL ACTION NO.  3:12CV557 CWR-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**              **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Betty Amos appeals the final decision denying her applications for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB").  The Commissioner

requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the

Administrative Law Judge.  Having carefully considered the hearing transcript, the

medical records in evidence, and all the applicable law, the undersigned recommends that

the decision be affirmed for the reasons that follow.

**Factual and Procedural Background**

On June 22, 2009, Amos filed applications for SSI and DIB, alleging she became

disabled on May 1, 2009, due to breathing problems and the human immunodeficiency

virus.  She was approximately 53 years old at the time, with previous work experience as

a poultry worker, short order cook, fast food worker, retail manager, kitchen manager,

and fast food services manager.  The applications were denied initially and on

reconsideration.  She appealed the denial and on July 8, 2011, Administrative Law Judge

James F. Barter ("ALJ") rendered an unfavorable decision finding that Plaintiff had not

established a disability within the meaning of the Social Security Act.  The Appeals

Council denied Plaintiff's request for review.  She now appeals that decision.

　　　After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled

under the Social Security Act.  At step one of the five-step sequential evaluation,[1] the ALJ

found Plaintiff was engaged in substantial gainful activity from January though March

2010, but after April 1, 2010, her earnings were below the substantial gainful activity

level for at least 12 consecutive months.  At steps two and three, the ALJ found that

Plaintiff's depression, adjustment disorder with anxiety, GERD, hypertension,

hyperlipidemia, and migraine headaches were not severe impairments; and, although her

hearing loss, obesity, dyspnea, sleep apnea, and human immunodeficiency virus were

severe, none of her impairments met or medically equaled any listing.  At step four, the

ALJ found that Plaintiff had the residual functional capacity to perform light work except

she "must avoid even moderate exposure to extreme heat, chemicals, and respiratory

irritants such as fumes, odors, dust and gases."[2]  Based on vocational expert testimony,

the ALJ concluded that given Plaintiff's age, education, work experience, and residual

---

[1]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2]ECF No. 9, p. 22.

functional capacity, she could perform her past relevant work as a poultry boner as it is generally performed.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because (1) the Appeals Council failed to properly consider new evidence of her mental impairments; (2) the ALJ erred in finding that she could perform her past relevant work as a poultry boner; and, (3) the ALJ failed to consider whether she could afford a CPAP machine.

As to Plaintiff's first point of error, in its order affirming the ALJ's denial of benefits, the Appeals Council noted that it had considered the additional evidence concerning Plaintiff's mental impairments, but found the information did not provide a basis for changing the ALJ's decision.  When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence.  *Jones v. Astrue*, 228 F.App'x. 403 (5th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir.  2005).  While the Court agrees that conflicting evidence regarding the severity of mental impairments existed here, the denial of benefits remains substantially supported by the evidence.

At step two of the sequential evaluation, the ALJ found that Plaintiff's depression and adjustment disorder with anxious mood were not severe as they caused no more than a minimal limitation in her ability to perform basic mental work activities.  *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985).  This finding is substantially supported by the consultative psychological examination of Dr. Jan Boggs, the psychiatric review of Dr. David Powers, and Plaintiff's overall lack of mental health treatment.

In the consultative psychological examination performed by Dr. Boggs in March 2010, Plaintiff reported that she was currently working as a restaurant kitchen manager, but her hours had been reduced because she had problems breathing and keeping up with the physical demands of the job.  She reported depression, chronic fatigue, memory

problems, crying spells, and concern for her children.  She also advised that while she was an "easy person to get long [sic] with," she sometimes got angry and would uncharacteristically "'go off' on someone but later apologize."  Her daily activities included cooking and cleaning her home, reading books and magazines, and talking on the phone.  She also reported that she lives alone, drives, attends church, shops for her necessities, and independently cares for her needs.[3]

On examination, Dr. Boggs observed that Plaintiff was "fully oriented and denied experiencing much anxiety or panic and reported no hallucinations or delusions."  He noted that she was of average intelligence, and that her moderately dysphoric mood did not distract from her ability to concentrate and only minimally limited her memory.  She was able to interpret one of two proverbs, adequately solve problems, and perform grocery store arithmetic.  She was also cooperative, understood directions, communicated well, and demonstrated an ability to get along with others during the examination.  Dr. Boggs also opined that Plaintiff would benefit from psychological support, but noted that she had not sought any formal mental health treatment, and had only received minimal treatment from her primary care physician.  Based on his examination findings, Dr. Boggs diagnosed Plaintiff with "a depressive disorder not otherwise specified and an adjustment disorder with anxious mood."[4]

---

[3]ECF No. 9, pp. 334-352.

[4]*Id.*

5

In a psychiatric review submitted in April 2010, Dr. David Powers concluded that the medical evidence indicated that Plaintiff was only mildly impaired in her activities of daily living, social functioning, and in concentration, persistence, and pace, and had no episodes of decompensation of extended duration.  In his assessment, Plaintiff's complaints were primarily related to her physical condition, and her mild depression was secondary with no restriction of her daily activities.  He likewise found that her mild restrictions in concentration and social functioning would not significantly interfere with her ability to perform routine work, given that she had successfully worked in the past and was still working at the time.  Based on his review, Dr. Powers determined that Plaintiff's mental impairments were not medically severe.[5]

In assessing the severity of Plaintiff's mental impairments, the ALJ assigned significant weight to the medical findings that she was only mildly impaired in all functional areas and had no episodes of decompensation.  He additionally found that her subjective complaints were not credible, in part, because she had not sought any mental health treatment, "despite being advised that her shortness of breath was likely caused by anxiety as any pulmonary or cardiac etiology had been ruled out."[6]  Based on the administrative record before him, the ALJ reasonably concluded that Plaintiff 's impairments would not preclude her from performing a reduced range of light work.

[5]ECF No. 9, pp. 339-352.

[6]ECF No. 9. p. 27.

Plaintiff contends that the Appeals Council erred, however, in failing to find that new and material evidence that she had, in fact, sought mental health treatment would have changed the outcome of the ALJ's decision. In support, Plaintiff submits records from the University of Mississippi Medical Center reflecting treatment for intermittent depression and a generalized anxiety disorder on September 23, 2010, and December 2, 2010, and a missed appointment on October 21, 2010. These records show, *inter alia,* that Plaintiff was of average intelligence; her attention and concentration were fair; her memory was intact; her thought processes were logical; her judgment was intact with fair insight; her mood was euthymic; and she was calm and cooperative. They also reflect that her medication remained unchanged from what her primary physician had prescribed, and that by her second and last visit in December 2010, she was feeling better.[7]

Given the totality of evidence, Plaintiff cannot show that these medical records would have changed the outcome of the ALJ's decision. Such minimal treatment for intermittent depression and a generalized anxiety disorder did not so contradict earlier evidence that a weighing of old and new evidence was required. *See Jones*, 228 F. App'x at 407. Nor does it undermine the existence of substantial evidence supporting the ALJ's determination that she was capable of a reduced range of light work. No reversal or remand is warranted on this issue.

---

[7]ECF No. 9, pp. 503-516.

Plaintiff asserts in her next assignment of error that the ALJ erred in finding that she could perform her past relevant work as a poultry boner.  Specifically, she argues that the ALJ's finding was not based on substantial evidence because her work as a poultry boner was not performed at the substantial gainful activity level, and thus cannot be considered past relevant work.  She additionally argues that the ALJ erred in allegedly failing to determine whether this past relevant work would allow exposures to irritants.

Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1) & 416.960(b)(1); *see also* 20 C.F.R.§ 404.1565(a). Substantial work activity involves doing significant physical or mental activities, whether done on a full or part-time basis, and it is gainful if it is "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. §§ 404.1572 & 416.972. There is a rebuttable presumption that the employee either was or was not engaged in substantial gainful activity ("SGA") if his or her average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines. *See* §§ 404.1574(b)(2)-(3) & 416.974(b)(2)-(3); *see also Lewis v.Apfel*, 236 F.3d 503, 515-516 (9th Cir. 2001).  Earnings are not a conclusive sign, however, of whether a job is substantial gainful activity.  *Id.*

Plaintiff does not dispute here that in the past 15 years, she has worked at two chicken plants, and that the work lasted long enough for her to learn how to do it.[8]   Nor does she dispute that she reported poultry earnings in her administrative filings, for both the mid and late 1990's, that averaged $ 960.00 per month.   She contends that her earnings from BC Rogers Poultry, Inc., indicate that her average monthly earnings were below the SGA level.   Although the record reflects that Plaintiff held more than one job while at B.C. Rogers Poultry, Inc., her *annual* earnings for this employer from 1998 - 2000 were as follows: (1)  $850.30 in 1998; (2) $ 1,032.02 in 1999; and, (3) $ 4, 285.76 in 2000.   Because her monthly earnings appear to fall below the designated SGA amount of $500.00 from 1990 to June 1990, and $700.00 from July 1999 to December 2000, Plaintiff argues that the ALJ erred in finding her poultry work constituted SGA. 20 C.F.R. § § 404.1574 (b) (2), 416.974 (b)(2).[9]

Plaintiff's argument is unavailing for several reasons.   Average monthly earnings are calculated under the regulations by dividing a claimant's actual earnings by the number of months he or she worked.   See 20 C.F.R. §§ 416.974a(a), 416.974(b).   But as the Commissioner argues, Plaintiff, who bears the burden of proof through step four of the process, failed to produce evidence of the number of months she worked at each job

---

[8] Plaintiff testified that at one plant, she worked on the "deboning line," and that at another plant, she worked on the "straight line" cutting liver.  ECF No. 9, p. 91.

[9] ECF No.  9, pp. 152–167, 206.

or was unemployed.  20 C.F.R. §§ 404.1520(a), 416.920 (a); *Holifield v. Astrue*, 402

F.App'x 24, 26 (5th Cir. 2010).  By her own admission on appeal, her monthly earnings

records for BC Rogers Poultry, Inc., were not in evidence at the time of the administrative

hearing, and significantly, none were included in the new evidence submitted for the

Appeals Council's consideration.[10]  The ALJ was also entitled to rely on Plaintiff's own

statements that she worked at two poultry plants and that her resulting earnings averaged

over the SGA amount.  Further, in determining that Plaintiff's past work as a poultry

boner constituted past relevant work, the ALJ explained as follows:

> The undersigned agrees with the testimony of the vocational expert as the
> evidence of record indicates the claimant has performed her work as a
> poultry boner and fast food worker for longer than a short determination
> and/or for up to including thirty days. As the vocational expert reported
> these occupations were unskilled in character having a specific vocational
> preparation level of two, considering the earnings records in evidence, there
> is evidence to support a finding that she has past relevant work as a poultry
> boner and fast food worker. . . .  The vocational expert testified that an
> individual of the same age, education, and work history as the claimant,
> who has the residual functional capacity as found herein, could perform the
> claimant's past relevant work as a poultry boner.  Pursuant to SSR 00-4p,
> the vocational expert's testimony is consistent with the information
> contained in the *Dictionary of Occupational Titles*.  The undersigned
> accepts the testimony as evidence that the claimant can perform her past
> relevant work as a poultry boner as it is generally performed given the
> residual functional capacity herein.[11]

While Plaintiff argues on appeal that the ALJ erred in adopting the vocational expert's

opinion that her past relevant work included poultry work, counsel did not challenge this

---

[10]ECF Nos. 9, pp. 503-516; 15, p. 5.

[11]ECF No. 9, pp. 28-29.  The Court notes that while the hearing transcript indicates that
certain portions of the vocational expert's testimony were inaudible, Plaintiff has never
challenged the accuracy of the ALJ's summation of the testimony in either his submissions to the
Appeals Council or this Court.

finding on cross-examination at the administrative hearing.  Instead, he agreed that her poultry work was past relevant work.

The Court also rejects Plaintiff's assertion that the ALJ erred in failing to determine whether her past relevant work as a poultry boner would allow her to avoid moderate exposure to extreme heat, chemicals, and respiratory irritants as provided in his residual functional capacity finding.  In response to a hypothetical posed by the ALJ, the vocational expert testified that Plaintiff could perform her past relevant work as a poultry boner with these environmental limitations.  To the extent the vocational expert's testimony conflicts with the *Dictionary of Occupational Titles*, the ALJ was entitled to rely on the vocational expert's testimony.  *Laurent v. Astrue*, 366 F.App'x 559, 561 (5th Cir. 2010) (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)).  The Court notes that while the record reflects contradictory reports concerning the source of Plaintiff's chlorine exposure in the early 1990's, she went on to work at poultry plants for several years.  *Bowie v. Astrue*, 262 F. App'x 642, 645 (5th Cir. 2008)(finding that claimant's previous ability to work despite impairment supported the ALJ's residual functional capacity assessment).  Substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work as a poultry boner.

As her final point of error, Plaintiff asserts that the ALJ's adverse credibility determination is not supported by substantial evidence because he failed to consider whether she could afford a CPAP machine for her sleep apnea.  When a claimant's

statements concerning the intensity, persistence, or limiting effects of symptoms are not

supported by objective evidence, the ALJ has the discretion to make a finding on their

credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's determination

is entitled to considerable deference.

A plain reading of the ALJ's opinion reflects that he denied benefits not because

of Plaintiff's inability to afford treatment, but because she failed to prove that her sleep

apnea (untreated) was so severe that it prevented her from performing light work activity.

*Peebles v. Chater*, 77 F.3d 477 (5th Cir. 1995); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th

Cir. 1987). The ALJ noted that Plaintiff has "obstructive sleep apnea for which she has

failed to lose weight as recommended and has not used the prescribed CPAP machine

despite the fact that her physician advised that her obstructive sleep apnea could be

contributing to her shortness of breath." He also noted that Plaintiff had "failed to advise

her primary care provider that she was diagnosed with obstructive sleep apnea or that she

was prescribed the use of a CPAP machine with which she was non-compliant." But

notwithstanding her shortness of breath and failure to follow recommended treatment,

substantial evidence confirms that she continued to work both below and at the SGA

level. And though Plaintiff testified at the administrative hearing that she could not

afford a CPAP machine, she has not provided any objective evidence establishing that she

does not qualify for free treatment or treatment at a reduced cost.[12]

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

---

[12]ECF No. 9, pp. 26-27.

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

      This the 7th day of February 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE
